IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| THERESA VONDRA, DONNA PODOLAK, LYNDA LARVIE, and ADAM POULOS, | CV-22-30-BLG-KLD |
| Plaintiffs, | ORDER |
| vs. | |
| CITY OF BILLINGS, | |
| Defendants. | |

This matter comes before the Court on a Pro Se Motion to Quash

Defendant's Subpoena to Produce Documents, Information or Objects or to Permit

Inspection of Premises in a Civil Action. (Doc. 44). Defendant City of Billings

("the City") served subpoenas seeking production of documents on the following

non-parties: (1) Business League of Massage Therapy and Bodywork (BLMTB)

c/o Patricia Brusati, Registered Agent; (2) Deborah Kimmet, Deb Kimmet

Massage and Movement LLC; and (3) Susan Carlson, Rocky Mountain School of

Massage. (Doc. 44-1). BLMTB, Kimmet, Carlson, and a fourth non-party, Vianna

Myles (collectively "Non-Parties") – all of whom are proceeding pro se – have

filed a Motion to Quash these "and any other subpoenas issued to members of the

BLMTB Board of Directors." (Doc. 44). Kimmet and Carlson currently serve on

the BLMTB board of directors; Myles served during some of the time period in question. (Doc. 44 at 1).

Pending before this Court are three additional motions, which are decided along with this Order. First, the City has filed a Motion to Extend Discovery Deadline for Limited Purpose, seeking to extend the discovery deadline for the limited purpose of deposing the Non-Parties. (Doc. 74 at 1). Second, the Non-Parties have filed a Pro Se Motion for a Protective Order and Motion to Quash or Modify Prospective Subpoenas to Compel Depositions, seeking a protective order preventing the potential deposition of any Non-Party or, in the alternative, that the line of questioning be limited to items not quashed by this Court Order. (Doc. 75 at 2–3). The Non-Parties further request the Court extend the deadline for a final reply on their Motion to Quash or Modify Prospective Subpoenas to November 13 to accommodate Kimmet's travel plans. (Doc. 75 at 3). Third, Plaintiffs have filed a response objecting to the City's Motion to Extend Discovery. (Doc. 76). To the Court's knowledge, no subpoenas have yet been issued.

For the reasons discussed below, the Non-Parties' Motion to Quash is granted.

I.      **Background**

Plaintiffs Theresa Vondra, Donna Podolak, Lynda Larvie, and Adam Poulos ("Plaintiffs") bring the underlying Section 1983 action against the City challenging

the constitutionality of a city ordinance ("Ordinance") regulating massage and spa

facilities in Billings, Montana. (Doc. 1). The Ordinance prohibits the practice of

massage therapy in Billings without a license or solo-practitioner exemption. (Doc.

36 ¶ 12). Plaintiffs allege the Ordinance violates the Fourth Amendment of the

United States Constitution, as applied to the States through the Fourteenth

Amendment, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. (Doc. 1 ¶¶ 107,

123, 139). Specifically, Plaintiffs make the following three constitutional

arguments: (1) the Ordinance facially violates the Fourth Amendment by

authorizing warrantless searches of massage therapists' properties, papers, and

records; (2) the Ordinance facially violates the Fourth Amendment by invading

Plaintiffs' reasonable expectation of privacy; and (3) the Ordinance, both facially

and as-applied, places an unconstitutional condition on the issuance of massage

therapy facility licenses and solo-practitioner certificates. (Doc. 1 ¶¶ 107, 123,

139).

On April 26, 2023, the City served subpoenas on the three Non-Parties,

seeking disclosure of the following:

> 1. All documents and communications (including emails) by any Board
> member about or relevant to the allegations and claims asserted in the
> lawsuit *Theresa Vondra, et al., v. City of Billings, et al.*, Cause No. CV
> 22-30-BLG-KLD[1];

---

[1] The subpoenas served on Kimmet and Carlson request "All documents and
communications (including emails) *involving you* that are about or relevant to the

2. All documents and communications (including emails) by any Board member about or relevant to the hiring of attorneys and/or the filing of *Theresa Vondra, et al., v. City of Billings, et al.*, Cause No. CV 22-30-BLG-KLD[2];

3. All documents and communications (including emails) involving you that are seeking to find or solicit persons to act as plaintiffs in a lawsuit against the City of Billings over the message therapy ordinance, and all subsequent responses;

4. All documents and communications (including emails) involving you and any plaintiff in *Theresa Vondra, et al., v. City of Billings, et al.*, Cause No. CV 22-30-BLG-KLD, that are about or relevant to the allegations and claims asserted in that lawsuit, and all subsequent responses;

5. All documents and communications (including emails) involving you and any attorney for Plaintiffs in *Theresa Vondra, et al., v. City of Billings, et al.*, Cause No. CV 22-30-BLG-KLD, which are about or relevant to the allegations, claims, and defenses asserted in that lawsuit, and all subsequent responses;

6. All documents and communications (including emails) in your possession or control that are about or relevant to the City of Billings massage therapy ordinance;

7. All documents and communications (including emails) in your possession or control that are about or relevant to the allegations, claims, and defenses asserted in *Theresa Vondra, et al., v. City of Billings, et al.*, Cause No. CV 22-30-BLG-KLD; and

---

allegations and claims asserted in the lawsuit *Theresa Vondra, et al. v. City of Billings, et al.*, Cause No. CV 22-30-BLG-KLD." (Doc. 44-1) (italics added).

[2] The subpoenas served on Kimmet and Carlson request "All documents and communications (including emails) *involving you* that are about or relevant to the hiring of attorneys and/or the filing of *Theresa Vondra, et al. v. City of Billings, et al.*, Cause No. CV 22-30-BLG-KLD." (Doc. 44-1) (italics added).

8. All documents and communications (including emails) in your possession or control that are about or relevant to any lobbying efforts about massage therapy and/or the City of Billings massage therapy Ordinance to the Montana State Legislature for the 2023 session.

In addition to the above, the City seeks the following from BLMTB:

9. All documents and communications (including emails) about or relevant to the regulation of massage therapy that were sent to the State Board of Massage Therapy in 2019-2023; and

10. All documents and communications (including emails) about or relevant to documents maintained by BLMTB which are about the City of Billings Ordinance on massage therapy, or otherwise about sexual trafficking and massage therapy, including the documents identified on BLMTB's website as "lobbying resources," "human trafficking resources," or "The Billings Materials."

(Doc. 44-1).

On May 9, 2023, the Non-Parties filed a Motion to Quash the three subpoenas. (Doc. 44). The Non-Parties object to the subpoenas on various grounds, arguing they (1) are not relevant to the underlying case, (2) are overly broad and burdensome, (3) request duplicative information, and (5) impermissibly require disclosure of privileged or other protected materials. (Doc. 44 at 3). On May 10, 2023, this Court temporarily suspended the deadlines set forth in the subpoenas pending resolution of the Non-Parties' Motion to Quash. (Doc. 45). Plaintiffs do not oppose the Motion and have submitted briefing on behalf of the Non-Parties. (Doc. 57); *See Cqi, Inc. v. Mountain West Farm Bureau Ins. Co.*, 2010 WL

11530839, at *2 (D. Mont. Aug. 13, 2010) (parties have standing to object to non-

party subpoenas on grounds of personal interest, privilege, or relevancy).

## II.    Legal Standard

District courts maintain "wide latitude in controlling discovery" and "rulings

on discovery issues fall within the court's broad discretion over case

management." *Voelker v. BNSF Railway Co.*, 2020 WL 6149553, at *2 (D. Mont.

Oct. 20, 2020) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995,

1000 (9th Cir. 2002). Federal Rule of Civil Procedure 45 governs non-party

subpoenas duces tecum. *See generally* Fed. R. Civ. P. 45. It is generally accepted

that the scope of discovery permitted under Rule 45 is the same as that permitted

under Federal Rule of Civil Procedure 26(b). *Adams v. Gissell*, 2022 WL 355758,

at *1 (D. Mont. Feb. 7, 2022). The scope of permissible discovery extends to all

> nonprivileged matter that is relevant to any party's claim or defense and
> proportional to the needs of the case, considering the importance of the
> issues at stake in the action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden or expense of
> proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Though relevancy is broadly defined, it retains "ultimate and necessary

boundaries." *BNSF Railway Co. v. Center for Asbestos Related Disease, Inc.*, 2022

WL 1442854, at *3 (D. Mont. May 6, 2022) (quoting *Hickman v. Taylor*, 329 U.S.

495, 507 (1947)). When evaluating whether discovery is relevant, the 2015

Amendments direct the courts' attention to proportionality — in other words, courts must balance the burden, cost, and importance of the issues at stake. *Frost v. BNSF Ry. Co.*, 218 Supp. 3d 1122, 1134 (D. Mont. 2016) (citing Rule 26 advisory committee notes (2015)). The 2015 Amendments caution courts against using the now-eliminated "reasonably calculated" language. *See* Rule 26 advisory committee notes (2015) ("The 'reasonably calculated [to lead to admissible evidence]' phrase has continued to create problems, however, and is removed from these amendments.'").

The party seeking discovery has the burden of demonstrating relevance under Rule 26(b)(1). *Caekaert v. Watchtowner Bible and Tract Society of New York, Inc.*, 2023 WL 3795394, at *1 (D. Mont. June 2, 2023). Notably here, courts have demanded a "stronger-than-usual showing of relevance" where the request is served on a non-party, "requiring the requesting party to demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." *BBK Tobacco & Foods LLP v. Skunk Incorporated*, 2020 WL 2395104, at *2 (D. Ariz. May 12, 2020). Thereafter, the party opposing discovery has the burden to show the request is improper. *Asarco LLC v. Atlantic Richfield Co.*, 2013 WL 12448555, at *2 (D. Mont. Sept. 20, 2013).

## III.    Discussion

The threshold question is whether the information sought from the Non-Parties is relevant to the underlying case. Here, after careful consideration of the arguments, the Court finds the subpoenas seek information that is not relevant to the Plaintiffs' constitutional claims nor to the City's central "closely regulated" industry defense. Because the Court quashes the subpoenas on the basis of relevancy, the Court need not reach the remainder of the arguments.

### A. Plaintiffs' Constitutional Claims

The Non-Parties raise relevancy objections to all ten of the City's requests (Doc. 44 at 3). Plaintiffs, on behalf of the Non-Parties, raise specific objections to Requests Nos. 2, 3, 4, 5, 6, 8, 9, and 10. (Doc. 57 at 11–13). The Non-Parties and Plaintiffs rest their arguments on Plaintiffs' underlying facial constitutional claims, maintaining that relevant information is limited to the plain text of the Ordinance and to the legislative history. (Doc. 57 at 10–13) (citing *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020)). As a result, Plaintiffs argue, Requests Nos. 2, 3, 4, and 5 (conversations between Plaintiffs, prospective plaintiffs, and counsel), Request No. 6 (information about the Ordinance), Requests Nos. 8 and 9 (information about lobbying efforts and regulation of massage therapy), and Request No. 10 (information about sex trafficking and massage therapy) are irrelevant to resolving the underlying constitutional claims. (Doc. 57 at 10–13).

In response, the City cites *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984), asserting "it is difficult to see" how Requests Nos. 1, 2, 3, 4, 5, 6, and 7 "could be considered not relevant to the case." (Doc. 63 at 23). There, in examining a First Amendment challenge, the court noted that "[t]he relevant governmental interest is determined by objective indicators as taken from the face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment of the statute, the stated purpose, and the record of proceedings." (Doc. 56 at 20; Doc. 63 at 23). However, the City fails to show how *Foley* authorizes discovery of the private, non-party communications and information sought here; seemingly inapposite to the City's contention, the *Foley* line of cases encourage analysis into a written law's full legislative record, *see Dream Palace v. Maricopa Cnty*, 1999 WL 35797866, at *17 (D. Ariz. Sept. 30, 1999), such as statements made by city officials. *Foley*, 163 F.3d at 552; *see also Colacurcio v. Kent*, 163 F.3d 545, 552 (9th Cir. 1998) (examining legislative intent and finding no "unusual procedural maneuvering on the part of" city planning committee, planning commission, city attorney, or any other governing body).

The City also points to Plaintiffs' Rule 30(b)(6) Notice (Doc. 56-5), claiming that Plaintiffs agree the scope of discovery is broad. (Doc. 56 at 19). Without commenting on the admissibility of these requests, as no motion challenging such has been filed, the Court finds Plaintiffs' Rule 30(b)(6) requests

are distinguishable from the requests at issue here. Specifically, the Rule 30(b)(6) requests seek information from the City regarding its purpose in adopting the Ordinance, its history of law and enforcement relating to human trafficking and prostitution, and information regarding the drafting, adoption, and promulgation of the Ordinance. (Doc. 56-5). Unlike the information sought here, Plaintiffs' requests seek information regarding the legislative record from the City itself, which is appropriate under *Foley.*

Discovery "cannot be used as a license to engage in a scattershot, burdensome, or speculative fishing expedition[.]" *Elgindy v. Aga Service Co.*, 2021 WL 5083761, at *3 (N.D. Ca. Nov. 2, 2021). Rather, the scope of discovery is clear – the Plaintiffs' facial constitutional claims require consideration of the text of the Ordinance and the legislative history. *Bostock v. Clayton Cnty*, 140 S.Ct. 1731, 1749 (2020). Accordingly, the Court finds that Requests Nos. 1, 2, 3, 4, 5, 6, and 7 are not relevant to the lawsuit's underlying constitutional claims and defenses.

## B. The City's "Closely Regulated" Industry Defense

Central to the City's defense is whether the massage industry is "closely regulated"; if so, then warrantless inspections are generally permissible as an exception to the Fourth Amendment's warrant requirement. (Doc. 56 at 10) (citing *Killgore v. City of S. El Monte*, 3 F.4th 1186, 1189 (9th Cir. 2021) (finding that

massage therapy is a "closely regulated" industry in California, and California ordinance providing for warrantless inspections of massage therapy businesses is constitutional as an exception to the Fourth Amendment warrant requirement)). The City argues Requests Nos. 8, 9, and 10 are relevant to whether massage therapy is a "closely regulated" industry. (Doc. 63 at 21–23); *Killgore*, 3 F.4th at 1189. A brief explanation of the "closely regulated" industry defense proves instructive here.

To understand whether an industry is "closely regulated," courts look to "the pervasiveness and regularity of the … regulation and the effect of such regulation upon an owner's expectation of privacy." *Killgore*, 3 F.4th at 1189 (quoting *United States v. 4,432 Mastercases of Cigarettes*, 448 F.3d 1168, 1176 (9th Cir. 2006)). The duration of government regulation is an important, although not a necessary, factor. *Killgore*, 3 F.4th at 1191 (citing *New York v. Burger*, 482 U.S. 691, 701, 107 S.Ct. 2636 (1987)). Warrantless inspections of businesses in "closely regulated" industries are permitted provided the following conditions are met: (1) "there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless inspections must be necessary to further [the] regulatory scheme"; (3) "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e]

a constitutionally adequate substitute for a warrant." *Killgore*, 3 F.4th at 1192

(quoting *Burger*, 482 U.S. at 702–03).

As to Request No. 8, the City argues the Non-Parties "may have lobbied the

Legislature to drop state regulation of massage therapy so that Plaintiffs could then

try to argue [] massage therapy is no longer closely regulated." (Doc. 63 at 23). As

to Request No. 9, the City contends that documents about the regulation of

massage therapy go to whether the industry is "closely regulated." (Doc. 63 at 22).

Lastly, the City argues Request No. 10 seeks information related to the City's

"interest in adopting the Ordinance and the scope of this interest." (Doc. 63 at 23).

The Plaintiffs stipulate the City has a substantial interest in adopting the

Ordinance. (Doc. 57 at 13) (citing Doc. 16 at 9) ("curtailing prostitution and

human trafficking is a substantial government interest").

The City's focus here is misplaced. Under *Killgore*, the relevant

considerations are the existence of a regulatory scheme, the governments' interest

in that scheme, whether warrantless searches are necessary for that scheme, and

whether the regulation constitutes "a constitutionally adequate substitution for a

warrant." *Killgore*, 3 F.4th at 1191–92. The City has failed to demonstrate how the

lobbying work or communications of private individuals or groups regarding the

regulation of massage therapy, the Ordinance, or sex trafficking and massage

therapy is relevant to whether the massage industry is "closely regulated." In short,

the *Killgore* analysis presents issues of law for the Court to determine – evidence

may include legislative history and the text of the Ordinance, but it does not

include any of the factual evidence sought by the City's subpoenas. *Killgore,* 3

F.4th at 1192 (focusing on the terms of the law in consideration of whether the

warrantless inspections are necessary and whether the law provides a

constitutionally adequate warrant substitute). Accordingly, the Court finds that

Requests Nos. 8, 9, and 10 are not relevant to the City's "closely regulated"

industry defense.

## IV.    Conclusion

For the reasons discussed above,

     **IT IS ORDERED** that the Non-Parties' Motion to Quash (Doc. 44) is

GRANTED.

     **IT IS FURTHER ORDERED** that the Non-Parties Pro Se Motion for

Protective Order and Motion to Quash or Modify Prospective Subpoenas to

Compel Depositions (Doc. 75) is GRANTED IN PART. To the extent the City

continues to seek the depositions of the Non-Parties, any line of questioning shall

be limited to those items or subjects not quashed by this Order.

     **IT IS FURTHER ORDERED** that the Defendant's Motion to Extend

Discovery for Limited Purpose (Doc. 74) is GRANTED. If it determines to do so,

the City shall have until November 13, 2023 to depose the Non-Parties, in

conformity with the limitations set out in this Order.

DATED this 18th day of October, 2023.

_____

Kathleen L. DeSoto
United States Magistrate Judge