IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| THERESA VONDRA, DONNA PODOLAK, LYNDA LARVIE, and ADAM POULOS, | CV-22-30-BLG-KLD |
| Plaintiffs, | ORDER |
| vs. | |
| CITY OF BILLINGS, | |
| Defendant. | |

This matter comes before the Court on cross motions for summary judgment filed by Plaintiffs Theresa Vondra, Donna Podolak, Lynda Larvie, and Adam Poulos ("Plaintiffs") (Doc. 78) and Defendant City of Billings ("Billings" or "the City") (Doc. 81). For the reasons discussed below, the parties' cross motions for summary judgment are granted in part and denied in part.

## I.      Background

On April 26, 2021, the Billings City Council adopted Ordinance 21-5757 ("the Ordinance"), titled "An Ordinance of the City of Billings, Montana, Regulating Massage and Spa Facilities Through Business Licensing Criteria, Providing Exemptions, Authorizing the City Administrator or Designee to Administratively Deny, Suspend or Revoke Business Licenses and Allowing an

Appeal From Such Action and Providing for Criminal and Civil Penalties Upon
Conviction of a Violation in Order to Combat Human Trafficking and to Promote
the Health and Welfare of the Billings Community."[1] (Doc. 87, ¶ 1); *see* Billings
City Ordinance 21-5757.

The Ordinance makes it unlawful for any person to operate a massage or spa
facility in Billings without a valid license issued by the Ordinance or to practice
massage therapy for compensation without a valid license pursuant to Montana
Code Annotated Section Title 27 Section 33. (Doc. 89, ¶ 7); Ordinance Secs. 7-
1904, 7-1902(o). The definition of massage or spa facility excludes solo
practitioners. Ordinance Sec. 7-1902(o)

The Ordinance contains several sections authorizing inspections of massage
therapists' property. First, the Ordinance makes it unlawful to refuse access to
government inspectors or law enforcement personnel, to provide identification, or
to remain behind locked doors. Ordinance Sec. 7-1911(k). Second, the Ordinance
provides that every licensee must "[i]mmediately open any locked door, including
any exterior door, upon request by an inspector or law enforcement officer who
provides proof of identity," with the caveat that no "treatment session in progress"

---

[1] The text of the Ordinance is available https://www.billingsmt.gov/2952/Massage-
and-Spa-Facilities-License.

lasting less than two hours may be interrupted by such a demand. Ordinance Sec. 7-1911(f).

Third, the Ordinance permits code enforcement officials and law enforcement officers to "enter a massage therapy business at any time during business hours to determine compliance with any law under that person's jurisdiction[]". Ordinance Sec. 7-1912(c). The Ordinance further specifies that "all rooms, cabinets, and storage areas shall be subject to inspection and any locked rooms, cabinets, or storage areas shall be promptly opened for inspection" and that "[u]pon request, all owners, managers, massage therapists, employees, contractors or persons occupying the facility other than clients shall present identification and shall not elude identification." Ordinance Secs. 7-1912(d), (f).

The Ordinance also requires every licensee to "keep a complete set of books and records for the business on site at the facility," including "a log of all massage therapy administered," and provides that "[t]he log and other books and records shall be subject to inspection upon request by the inspector during normal business hours." Ordinance Sec. 7-1911(c). Protected health information may be redacted from the records. The Ordinance further contains a severability clause, providing that "[i]f any provision of this ordinance or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect the other provisions of this ordinance[]". Ordinance Sec. 7-1921(2).

3

Plaintiffs Vondra, Podolak, and Larvie are licensed massage therapists in the City of Billings, and Plaintiff Poulos is one of Vondra's massage clients. (Doc. 87, ¶ 24). Plaintiff Vondra operates her own massage company and employs six massage therapists; Plaintiff Larvie operates from a commercial space as a solo practitioner; and Plaintiff Podolak operates from her home in a 55-and-over apartment community as a solo practitioner.

On April 6, 2022, Plaintiffs filed this action against the City of Billings and Individual Defendants in their official capacities as employees of the City of Billings. (Doc. 1). This Court dismissed Individual Defendants as parties on January 17, 2023. (Doc. 43). The case proceeded against the City.

Plaintiffs allege the Ordinance violates their rights under the Fourth Amendment to the United States Constitution and assert three claims for relief under 42 U.S.C. § 1983. Count I for "physical invasion of property" alleges the Ordinance violates the Fourth Amendment on its face because it subjects "private areas of businesses" and "private business records" to "unreasonable warrantless searches in the form of physical trespasses" by City code enforcement officials and law enforcement officers. (Doc. 1, ¶¶ 107–122). Count II for "invasion of privacy" alleges the Ordinance violates the Fourth Amendment on its face because it "confers warrantless search powers" to City code enforcement officials and law enforcement officers. (Doc. 1, ¶¶ 123–137). Count III alleges the Ordinance is

unconstitutional on its face and as applied because it violates the "unconstitutional conditions doctrine" by conditioning licensure on the surrender of the applicant's Fourth Amendment rights. (Doc. 1, ¶¶ 138–149).

Plaintiffs request a declaratory judgment that the Ordinance violates the Fourth Amendment, and injunctive relief permanently enjoining Defendants from enforcing the Ordinance in its entirety, or in the alternative, enjoining them from enforcing the Ordinance by conducting future warrantless searches of Plaintiffs' businesses, homes, and papers, or of any similarly situated massage therapy businesses or practitioners. (Doc. 1, ¶¶ 150-157). Plaintiffs also request an award of nominal damages, attorneys' fees, and "all other legal and equitable relief to which [they] may be entitled." (Doc. 1, ¶¶ 159–116).

## II.    Legal Standards

### A. Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248. In determining whether a genuine dispute of

material fact exists, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255.

## B. Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches are presumptively unreasonable under the Fourth Amendment, subject to certain exceptions. *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015). "The Court has long recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes." *New York v. Burger*, 382 U.S. 692, 699 (1987). "An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable." *Burger*, 482 U.S. at 699 (citing *Katz v. United States*, 389 U.S. 347 (1967) (Harlan, J., concurring). This expectation of privacy exists with respect to traditional searches for the purpose of gathering criminal evidence as well as to administrative inspections designed to enforce regulatory statutes. *Burger*, 482 U.S. at 699. However, "an expectation of privacy in commercial premises [] is different from, and indeed less than, a similar expectation in an individual's home." *Burger*, 482 U.S. at 700.

//

## III.   Discussion

### A. Facial Challenges to the Fourth Amendment

The City first avers that facial challenges are disfavored because they (1) "often rest on speculation" and risk the "premature interpretation of statutes on the basis of factually barebones records"; (2) counter "the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied"; and (3) "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." (Doc. 82 at 13) (quoting *Washington State Grange v. Washington State Repub. Party*, 552 U.S. 442, 450–51 (2008)).

Although facial challenges are "the most difficult … to mount successfully," the United States Supreme Court has "never held that these claims cannot be brought under any otherwise enforceable provision of the Constitution." *Patel*, 576 U.S. at 415. Facial challenges under the Fourth Amendment are no exception. *Patel*, 576 U.S. at 415. The Court proceeds with this principal in mind.

### B.  The Closely Regulated Industry Warrant Exception

Warrantless searches of homes, businesses, and papers are presumed unconstitutional unless a specifically delineated warrant exception applies.

*Coolidge v. New Hampshire*, 403 U.S. 443, 477–78 (1971). Here, it is undisputed that the warrantless inspections provided for under the Ordinance constitute a search. The City argues that massage therapy in Montana is subject to the warrant exception for administrative searches of "closely regulated" industries. (Doc. 82 at 26–27) (citing *United States v. 4.432 Mastercases of Cigarettes*, 448 F.3d 1168, 1176 (9th Cir. 2006)). Plaintiffs counter that (1) the Ordinance's primary purpose is crime control in violation of the Fourth Amendment's "special needs" doctrine, (2) massage therapy is not closely regulated under *United States v. Jones*, and (3) massage therapy is not closely regulated under *Katz v. United States.* (Doc. 79 at 19, 23). The Court will address each argument in turn.

### i.    The "Special Needs" Doctrine and Administrative Searches

Plaintiffs contend that, prior to reaching the merits of the "closely regulated" industry defense, the Court must first determine whether the Ordinance satisfies the Fourth Amendment's "special needs" doctrine. (Doc. 79 at 19). The City counters that the "special needs" doctrine is separate from, and not a threshold test to, the "closely regulated" industry exception. (Doc. 88 at 6–7). The Court disagrees; although the term "threshold test" is not used, courts within this Circuit clearly contemplate "special needs" within their analysis of administrative searches.

The "closely regulated" industry exception falls within the broader category of administrative searches, and a survey of decisions from within this Circuit and the Supreme Court reveals that "administrative" and "special needs" searches are treated together "as species of a common genus." *Verdun v. City of San Diego*, 51 F.4th 1033, 1038 (9th Cir. 2022) (noting that the "administrative use or special needs exception has been invoked to justify warrantless searches of certain closely regulated businesses", including administrative searches of massage parlors); *see also Burger*, 482 U.S. at 702 (observing that "as in other situations of 'special need'", warrantless inspections of commercial premises may be reasonable within the meaning of the Fourth Amendment). Indeed, as the Ninth Circuit once explained, "[t]here is a 'special needs' exception to the warrant requirement for administrative searches." *Verdun*, 51 F.4th at 1038 (quoting *Whalen v. McMullen*, 907 F.3d 1139, 1151 (9th Cir. 2018)). Under this category of exceptions, "[s]earch regimes where no warrant is ever required may be reasonable where special needs … make the warrant and probable cause requirement impracticable, and where the primary purpose of the search[] is distinguishable from the general interest in crime control." *Verdun*, 51 F.4th at 1038 (quoting *Patel*, 576 U.S. at 419 (internal quotation marks omitted)).

The City cites to a footnote in *Ferguson v. City of Charleston*— a case involving a state hospital's program to test maternity patients' urine for cocaine—

for the proposition that *Ferguson* "literally held that the analysis of the 'special needs doctrine' [] 'differs' from the analysis of the closely regulated industry exception." (Doc. 88 at 7–8) (citing *Ferguson*, 532 U.S. 67, 83, FN 21 (2001)). That footnote states, in full:

> Accordingly, this case differs from *New York v. Burger*, 482 U.S. 691 [] (1987), in which the Court upheld a scheme in which police officers were used to carry out administrative inspections of vehicle dismantling businesses. [*Burger*] involved an industry in which the expectation of privacy in commercial premises was "particularly attenuated" given the extent to which the industry in question was closely regulated. More important for our purposes, the [*Burger*] Court relied on the "plain administrative purposes" of the scheme to reject the contention that the statute was in fact "designed to gather evidence to enable convictions under the penal laws…". The discovery of evidence of other violations would have been merely incidental to the purposes of the administrative search. In contrast, in this case, the policy was specifically designed to gather evidence of violations of penal laws.

*Ferguson*, 532 U.S. at 83, FN 21 (internal citations omitted) (citing *Burger*, 482 U.S. at 700–15).

The City's argument is misplaced. *Ferguson* did not "hold" that the "special needs" doctrine and "closely regulated" industries differ. Rather, when read in context, the footnote serves only to contrast the facts in *Ferguson*—where the "immediate objective of the searches was to generate evidence for law enforcement purposes"—with those in *Burger*—where the discovery of criminal wrongdoing would have been "merely incidental to the purposes of administrative search."

10

*Ferguson*, 532 U.S. at 83. In any case, Plaintiffs' argument is not that the "closely regulated" industry exception and the "special needs" doctrine are the *same*; rather, Plaintiffs argument is that the searches must satisfy a "special need" in order to fall within the broader category of administrative searches.

The City next cites *Killgore v. City of South El Monte*, a case concerning the close regulation of massage therapy, correctly observing that the court did not expressly consider, adopt, or apply the "special needs" doctrine as a "threshold test" to the "closely regulated" industry analysis. 3 F.4th 1186, 1192 (2021). Yet the City fails to recognize that the Ninth Circuit cited, with approval, the district court's finding that plaintiff "failed to allege with sufficient facts that the searches were conducted for a criminal purpose." *Killgore*, 3 F.4th at 1193, FN 9; *see Killgore v. City of South El Monte*, 2020 WL 4258584, *4 (C.D. Cal. Apr. 24, 2020) (rejecting plaintiff's argument that the searches were made "for purposes of conducting criminal searches outside the scope of the 'special needs administrative search doctrine'").

Accordingly, the Court will first examine whether the searches satisfy a "special need" so as to fall within the broader administrative search category.

### ii.    Whether the Searches Serve a "Special Need"

As noted above, warrantless searches may be reasonable where "special needs … make the warrant and probable-cause requirement impracticable, and

where the primary purpose of the searches [are] [d]istinguishable from the general interest in crime control." *Patel*, 576 U.S. at 419 (internal citations and quotation marks omitted). A guiding principle with respect to the "special needs" doctrine is that "warrantless administrative searches must bear a sufficient connection to the governmental interests they serve and cannot advance as their 'primary purpose' 'uncover[ing] evidence of ordinary criminal wrongdoing.'" *Verdun*, 51 F.4th at 1040 (citation omitted).

*Ferguson*, the case involving a hospital's warrantless drug screening policy referenced above, represents a textbook example of an improper criminal purpose. Plaintiffs, ten women who received obstetrical care at the hospital and who were arrested after testing positive for cocaine, sued on the basis that the nonconsensual drug tests were unconstitutional searches. The court rejected the government's "special needs" argument, concluding that although "the ultimate goal of the program may well have been to get the women in question into substance abuse treatment and off of drugs, the immediate objective of the searches was to generate evidence for law enforcement purposes in order to reach that goal." *Ferguson*, 532 U.S. at 82–83. Significant to the court's conclusion was the policy's incorporation of police operational guidelines, chain of custody requirements, the range of possible criminal charges, specific instructions regarding law enforcement interrogations, logistics of police notification and arrests, and the extensive

involvement of police and prosecutors in the day-to-day administration of the policy. *Ferguson*, 585 U.S. at 84.

Yet an administrative scheme may serve the same ultimate purpose as penal laws, provided that the scheme differs in its subsidiary purpose and "prescribe[s] different methods of addressing the problem." *Burger*, 482 U.S. at 713. In *Burger*, for example, the Supreme Court addressed a statute permitting warrantless searches of junkyards to address automobile theft. The court concluded that unlike penal laws, which address automobile theft by punishment, the administrative scheme "serve[d] the regulatory goals of seeking to ensure that vehicle dismantlers are legitimate businesspersons and that stolen vehicles and vehicle parts passing through automobile junkyards can be identified." *Burger*, 482 U.S. at 715.

Turning to the case at bar, Plaintiffs argue that the City conceded the crime control purpose of the Ordinance and therefore cannot rely on the administrative search exception. (Doc. 90 at 10). Plaintiffs point first to the City's Answer, wherein the City states that "[t]he Ordinance at issue does not violate the Constitution because curtailing prostitution and human trafficking is a substantial government interest." (Doc. 16 at 9, ¶ 5). This argument, however, fails to recognize that "[a]dministrative statutes and penal laws may have the same *ultimate* purpose of remedying the social problem, but they have different subsidiary purposes and prescribe different methods of addressing the problem."

*Burger*, 482 U.S. at 712. Like *Burger*, where the city sought to address vehicle theft and to encourage legitimate businesses, Billings enacted the Ordinance to address prostitution and sex trafficking through regulation of "businesses that purport to be massage or spa facilities in order to safeguard and promote the public health, safety and welfare of the residents of the city." Ordinance Sec. 7-1901. The fact that penal laws also address prostitution or sex trafficking does not render the Ordinance unconstitutional. *See Burger*, 482 U.S. at 712–13 (finding statute served an administrative purpose even where charges were filed against junkyard owner in district court).

Plaintiffs further argue that the Ordinance's "immediate purpose" is crime control, highlighted in part by the scheme's information-sharing with law enforcement and statements made by City police officers. (Doc. 79 at 21–22) (citing *Ferguson*, 532 U.S. at 83). However, unlike *Ferguson*, where the program worked in direct concert with law enforcement, the Billings Ordinance does not provide specific guidelines and directives to facilitate information sharing; any such communication is only ancillary to the Ordinance's regulatory purpose. This conclusion is supported by City Attorney Gina Dahl's statement to the Billings City Council, which, like *Burger*, highlights that the Ordinance's primary purpose is to shut down illicit operations through regulatory means:

> If properly implemented and enforced, this ordinance will reduce
> human trafficking by making it more difficult for illicit businesses to

operate under the guise of being massage or spa facilities.
Additionally, it will save resources for law enforcement by providing
an alternative process to shut down these illicit businesses, and it will
drive away criminal enterprises masquerading as legitimate
businesses in exchange for low cost, nominal regulation.

(Doc. 79-4).

Plaintiffs' final argument is that the identity of the inspectors—inspection

officers as well as law enforcement officers—is indicative of crime control. (Doc.

79 at 21). However, the court "fail[s] to see any constitutional significance in the

fact that police officers, rather that 'administrative' agents, are permitted to

conduct the [] inspection." *Burger*, 482 U.S. at 717.

Accordingly, the searches provided for under the Ordinance fall within the

administrative search or "special needs" category of warrant exceptions.

### iii.   Plaintiffs' *Jones* Claim

Plaintiffs assert two facial claims under the Fourth Amendment, categorizing

the first as a "*Jones*" claim for physical trespass to property (Count I) and the

second as a "*Katz*" claim for invasion of their reasonable expectation of privacy

(Count II). (Doc. 79 at 23) (citing *United States v. Jones*, 565 U.S. 400 (2012) and

*Katz*, 389 U.S. at 360 (1967) (Harlan, J., concurring)).

Under *Katz*, a search occurs when law enforcement violates an individual's

"constitutionally protected reasonable expectation of privacy." 389 U.S. at 360

(Harlan, J. concurring). In *Jones*, the court clarified that *Katz* "added to", but did

not substitute, the common law trespassory test. 565 U.S. at 952. Accordingly, *Jones* recognized that physical invasion of private property for purposes of obtaining information "would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted." 565 U.S. at 404–09.

"*Jones*" searches, Plaintiffs maintain, ask whether the search was reasonable at the time the Fourth Amendment was ratified, whereas inquiries into societal expectations of privacy are properly relegated to *Katz* searches. (Doc. 79 at 23). To determine whether the Ordinance is unconstitutional under *Jones*, Plaintiffs urge this Court to consider (1) whether the regulated activity existed at the time of the Founding and (2) whether it was subject to reasonable warrantless searches at that time; if yes, the court must apply the doctrinal test for reasonableness that existed in 1791. (Doc. 79 at 24). Conversely, Plaintiffs contend, *Katz* looks to the pervasiveness and duration of the regulations. (Doc. 79 at 23–24).

This argument is unpersuasive. Plaintiffs do not provide any authority that that delineates Fourth Amendment claims as either "*Jones*" or "*Katz*" claims, nor that applies a separate test to "*Jones*" or "*Katz*" claims within the "closely regulated" industry context. (Doc. 86 at 12); *see Carpenter v. United States*, 585 U.S. 296, 386 (2018) (Gorsuch J., dissenting) (distinguishing between *Katz* and *Jones* "arguments"). This may be because, as far as the Court can ascertain, no such authority exists. Most of the cases upon which Plaintiffs rely pertain to the

16

general search analysis or to warrant exceptions not at issue here; only two pertain to the "closely regulated" industry exception. (*See* Doc. 86 at 12). In *Colonnade Catering Corp., v. United States*, the court found that Congress enjoyed "broad power to design such powers of inspection" over the liquor industry, which had been subject to close supervision and inspection since the 1600s. 397 U.S. 72, 75–77 (1970). Similarly, in *Patel*, the court observed that "[h]istory is relevant when determining whether an industry is closely regulated". 576 U.S. at 425 (citing *Burger*, 482 U.S. at 707). *Patel* and *Colonnade Catering* underscore the importance of historical regulations to the "closely regulated" industry analysis; it does not follow that an industry must have been subject to warrantless searches when the Fourth Amendment was ratified.

History is indeed an important consideration, however, as the well-established analysis of "closely regulated" industries is rooted in the pervasiveness and duration of the industry's regulations. *Killgore*, 3 F.4th at 1198 (considering the "pervasiveness" and "duration" of massage therapy regulations in California); *Burger*, 482 U.S. at 701. Accordingly, the Court will apply these considerations to determine whether the searches are constitutional.

### iv.    Whether Massage Therapy is "Closely Regulated" in Montana

The Court turns now to the City's central defense: that massage therapy in Montana is "closely regulated" and thus excepted from the Fourth Amendment's

warrant requirement. To determine whether an industry is "closely regulated", the court looks to "the pervasiveness and regularity of the … regulation and the effect of such regulation upon an owner's expectation of privacy." *4,432 Mastercases of Cigarettes*, 448 F.3d at 1176 (citation omitted). A warrant is not required "in such situations because the … regulatory presence is sufficiently comprehensive and defined that the owner of the commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *4,432 Mastercases of Cigarettes*, 448 F.3d at 1176 (internal quotation marks and citation omitted).

The City argues that this Court need only look to *Killgore*, the recent Ninth Circuit decision finding that massage therapy was a "closely regulated" industry in California. 3 F.4th 1186. In *Killgore*, the city enacted an ordinance to "better control illicit operations [in massage therapy establishments] and protect and promote the public health, safety and welfare by imposing stricter requirements on massage practitioners, therapists, and establishments." 3 F.4th at 1188. The ordinance imposed extensive background investigations and conditions upon massage therapy establishments, including the hours of operation, qualifications of employees, advertising guidelines, hygiene parameters, limits on altering the interior of the building, and required establishments to "allow 2 inspections a year … to ensure compliance of all conditions of approval." *Killgore*, 3 F.4th at 1188.

18

The ordinance required conditional use permits (CUPs) for the operation of massage establishments. *Killgore*, 3 F.4th at 1188.

The City issued plaintiff a CUP in 2017, and thereafter entered plaintiff's business on three occasions without consent or court order to search the non-public areas for violations of the CUP. *Killgore*, 3 F.4th at 1188. Plaintiff sued, alleging the city violated his Fourth Amendment right against warrantless searches. The district court found that the massage therapy industry was "closely regulated" and thus excepted from the warrant requirement; plaintiff appealed.

On appeal, the court first considered the pervasiveness of California's state-wide regulation of the massage therapy industry, looking primarily to California's 2014 Massage Therapy Act. *Killgore*, 3 F.4th at 1190. The act "created additional certification requirements for new massage professional applicants and impos[ed] greater statewide regulations on all certified massage therapists and practitioners [as compared to the former 1985 level]", provided disciplinary measures, and regulated attire and areas of the body that practitioners may massage. *Killgore*, 3 F.4th at 1190, FN 1 (citing Cal. Bus. & Prof. Code §§ 4600–21). Because the act "'completely regulate[d] the environment in which [massages were] provided' through detailed certification requirements," the court found that it represented a "a textbook application of the 'closely regulated' industry doctrine." *Killgore*, 3 F.4th at 1190 (quoting *Rush v. Obledo*, 756 F.2d 713, 720 (9th Cir. 1985)).

19

In addition to California's state-wide regulations, the court also examined the city's ordinance and CUP, finding that they "illustrate[d] the [c]ity's heavy regulation of this industry and the diminished expectation of privacy of massage establishment owners." *Killgore*, 3 F.4th at 1190. The ordinance and CUP required compliance with 16 conditions governing hours of operation, appearance, cleanliness and hygiene, advertising, and mandated reasonable inspections; these conditions, the court found, "should have provided sufficient notice to [plaintiff] that [his] property … will be from time to time inspected by government officials." *Killgore*, 3 F.4th at 1190–91 (quoting *4,432 Mastercases of Cigarettes*, 448 F.3d at 1177–78).

Finally, the court looked to California's 30-year history of regulation, noting that although "a long history of government regulation is not necessary, [] duration is an 'important factor.'" *Killgore*, 3 F.4th at 1191 (citing *Burger*, 482 U.S. at 701). Indeed, shorter periods have also been deemed satisfactory; in *Burger*, for example, the Supreme Court found a five-year-old regulatory scheme pervasively regulated. 482 U.S. at 701.

Here, after careful consideration of the above factors, the parties' arguments, and the facts of this case, the Court finds that massage therapy in Montana is a "closely regulated" industry.

Massage therapy in Montana is regulated under Title 37 Chapter 33 of the Montana Code Annotated. *See* Mont. Code Ann. § 37-33-401–406 (2023). The statute created a Board of Massage Therapy to license massage therapists, establish licensure and continuing education requirements, and to take disciplinary action. Mont. Code Ann. § 37-33-405. In 2019, the Montana State Legislature enacted an additional provision authorizing statewide warrantless inspections of massage therapy businesses to ensure that a massage therapist's license is conspicuously displayed on the premises. Mont. Code Ann. § 37-33-406(2).

The Court acknowledges that these provisions, on their own, are likely insufficient to render massage therapy "closely regulated." However, Montana's massage therapy landscape is further subject to an extensive administrative code, which regulates certification, professionalism, legal and ethical requirements, and business practices. *See* Mont. Admins. R. 24.155 (2023). Montana's administrative code provides detailed regulations regarding specific standards of professionalism, legal and ethical requirements, confidentiality, business practices, roles and boundaries, and prevention of sexual misconduct and inappropriate touch, all of which are specific to the massage therapy industry. Mont. Admins R. 24.155.402, 902. Additionally, the code prohibits numerous activities, including deceptive or sexually oriented advertising, accepting, or performing a massage therapy to which the licensee knows she is not competent to perform, incompetence or negligence

which results in an unreasonable risk of physical injury to the client, failing to adequately supervise staff, sexual conduct with a client, and sexual misconduct and inappropriate touching with a client. Mont. Admin. R. 24.155.901.

Plaintiffs argue that by the City's logic, "every profession and occupation with a license requirement and code of conduct is subject to "extensive administrative regulations." (Doc. 86 at 20). However, *Killgore* relied heavily on California's certification requirements which, like Montana's, require proof of successful completion of a massage therapy program, a minimum of 500 hours of study, a passing score on a state examination, continuing education, and information regarding criminal convictions. Mont. Admins R. 24.155.604, 615; Cal Bus. & Prof. Code § 4604; *see also Burger*, 482 U.S. at 704 (finding junkyards closely regulated in part because "[a]n operator cannot engage in this industry without first obtaining a license, which means that he must meet the registration requirements and must pay a fee."). Here, as in *Killgore*, massage therapy is "completely regulate[d]" by Montana's extensive administrative code. 3 F.4th at 1190.

Furthermore, although the Ordinance itself cannot render an industry closely regulated, *Killgore* nonetheless examined the specific requirements of the municipal ordinance at issue. 3 F.4th at 1190; *see Patel*, 576 U.S. at 425 ("The City wisely refrains from arguing that [the ordinance] itself renders hotels closely

22

regulated"). Here, the Ordinance regulates recordkeeping, coverage of windowpanes, operational hours, advertising, clothing, and service menus, in addition to a prohibition of persons from living or sleeping on the premises or providing services that are sexual in nature. Ordinance Secs. 7-1910–11. Plaintiffs correctly point out that the Billings Ordinance is less comprehensive than that in *Killgore*, which also regulated signage, ventilation, and provided for specific hygiene and safety standards, such as sterilization of instruments, storage of liquids, and availability of sanitary towels. *See* City of South El Monte Ordinance 1195 § 5 (2014). However, because the analysis is driven by Montana's state-wide regulations, and not by the Ordinance itself, the Court finds this distinction unavailing.

Turning now to the duration of regulations, the Court observes that Montana has regulated massage therapy for approximately 29 of the past 55 years. *See* Mont. Code Ann. § 66-2901 (1967); § 37-33-401–06. In 1967, the Legislature created a State Board of Massage Therapists to regulate and license massage therapy for the protection of the public. Mont. Code Ann. § 66-2901. This statute was repealed in 1983, and massage therapy remained unregulated until the adoption of the Massage Therapy Act in 2009. Mont. Code Ann. §§ 37-33-401–406. Montana's massage therapy industry has now been regulated for the last 15 years, and at the time the Ordinance was enacted in 2021, the industry had been

23

regulated for 12. "[A]" long history of government regulation is not necessary," and the Court does not see a constitutionally significant difference between the 30 years in *Killgore* and the 12–15 present here.

Plaintiffs urge this Court to also consider whether and to what extent massage therapy is "inherently dangerous", noting that this factor is recognized by the Fifth, Sixth, and Seventh Circuits. (Doc. 90 at 14) (citing *Patel*, 576 U.S. at 424 and *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 967–68 (5th Cir. 2023)). The Court declines to do so. Although dangerousness may indeed be relevant in some situations, this Circuit has recently warned that such a consideration is "inconsistent with various administrative search exception cases", including "periodic searches of regulated businesses." *Verdun*, 51 F.4th at 1040–41; *see also Killgore* (no consideration of "inherent dangerousness" of the massage therapy industry); *but see Patel*, 576 U.S. at 424 (distinguishing hotels from other closely regulated industries because "nothing inherent in the operation of hotels poses a clear and significant risk to the public welfare.").

Plaintiffs also briefly argue that the Ordinance is preempted by state law because the Montana Code Annotated denies local governments "any power that applies to or affects the standards of professional or occupational competence established pursuant to Title 37 as prerequisites to the carrying on of a profession or occupation." (Doc. 86 at 19) (citing Mont. Code Ann. § 7-1-111 (2023)).

24

Beyond this, however, Plaintiffs offer no further argument or guidance to the Court. With that being said, the Ordinance applies to the licensure of massage therapy businesses; it does not add to or effect any prerequisites to the individual profession or occupation of massage therapy.

For these reasons, the Court finds that Montana's massage therapy industry is "closely regulated."

### a. Whether the Search is Reasonable

The court turns now to the question of reasonableness. A warrantless inspection of a business in a "closely regulated" industry is reasonable if three additional criteria—i.e., the *Burger* elements—are met: (1) "there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless inspections must be necessary to further [the] regulatory scheme"; and (3) "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." *Burger*, 482 U.S. at 702–03.

First, there is no question that curtailing prostitution and human trafficking is a substantial government interest. (Doc. 83-3 at 3); *see Killgore*, 3 F.4th at 1193. Second, the warrant exception is necessary to further the Ordinance, which contains provisions such as a prohibition on persons living at the premises, prohibition of sexual activities, signage and window requirements, and restrictions

on attire. *See* Ordinance Sec. 7-1910. Plaintiffs counter that a warrant may be obtained quickly and easily, obviating the need for a warrantless search; however, as the Ninth Circuit observed in *Killgore*, "[t]hese sorts of violations could go easily undetected, and a warrant requirement would only frustrate the government's ability to discover them." 3 F.4th 1186.

As to the third prong, however, Plaintiffs persuasively argue that Sections 7-1910(k), 7-1911(c) and (f), and 7-1912(c), (d) and (f) are overbroad and thus invalid unless sufficiently limited by proper drafting.

Under the Ordinance, a solo practitioner is exempted from the definition of a "massage or spa facility." Ordinance Sec. 7-1902(o). However, notwithstanding this exemption, the Ordinance mandates that solo practitioners comply with Sections 7-1910 and 7-1911. *See* Ordinance Sec. 1902(o) ("The term 'massage or spa facility' shall not include [a] place of business where only one licensed massage therapist practices as a solo practitioner who is in compliance with all other applicable city code provisions as well as sections 7-1910 and 1911"). Sections 7-1910(k), 7-1911(c), and 7-1911(f) prohibit refusing access "to government inspectors or law enforcement personnel", provide for the inspection of treatment logs, and mandate the immediate opening of "any locked door", respectively. Ordinance Secs. 7-1910(k); 7-1911(c); 7-1911(f).

Section 7-1912(c) provides that an officer "may enter a *massage therapy business* at any time during business hours to determine compliance with any law under that person's jurisdiction[]". Ordinance Sec. 7-1912(c) (emphasis added). "Massage therapy business" is not defined by the Ordinance, however, and ostensibly applies to solo practitioners operating from their homes. Relatedly, Sections 1912(d) and (f) fail to indicate whether they apply to "massage or spa facilities", and could therefore also apply to at-home solo practitioners. Section 7-1912(d) mandates that "[a]ll rooms, cabinets, and storage areas shall be subject to inspection and any locked rooms, cabinets, or storage areas shall be promptly opened for inspection[]" and Section 7-1912(f) provides that "[u]pon request, all owners, managers, massage therapists, employees, contractors, or persons occupying the facility other than clients shall present identification and shall not elude identification[]". Ordinance Secs. 7-1912(d), (f).

In oral argument, the City maintained that the intent was to exempt solo practitioners from warrantless inspections, and that any interpretation to the contrary is the result of drafting issues. While that may be, as currently written, the plain text of the Ordinance impliedly permits warrantless inspections of the private areas of a solo practitioners' homes, including their private bedrooms, drawers, and bathrooms. This overbroad drafting fails to recognize the special circumstances of massage therapy businesses operated from a practitioner's home. *See Rush*, 756

27

F.2d at 721 (finding that an ordinance permitting warrantless inspections of family day care homes fails to "properly reflect the peculiar nature of family day care homes" and "should not extend beyond the 'closely regulated business' in which the provider engages)). Indeed, at the Fourth Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

As to Section 7-1012(c), the Court finds that the provision for inspections "at any time during business hours to determine compliance with *any law* under that person's jurisdiction, including but not limited to this article or provisions of the Massage Therapy and Licensing Act" is overbroad in that it fails to preclude general searches by state officials. Ordinance Sec. 7-1912(c) (emphasis added). Administrative inspections are "designed to enforce regulatory statutes"; as written, however, Section 7-1912(c) permits warrantless searches to ensure compliance with any non-regulatory law, such as drug trafficking or drug possession. This extends beyond the "plain view" exception contemplated in *Burger* and into areas properly related to investigatory searches. *Burger*, 482 U.S. at 716 ("The discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render that search illegal or the administrative scheme suspect."); *see Killgore*, 3 F.4th at 1192–93 (the "business owner must

allow 2 inspections a year [] *to ensure compliance of all conditions of approval*")
(emphasis added).

Lastly, Plaintiffs' argument that the searches are not sufficiently constrained
by their frequency is unpersuasive. As in *Killgore*, where the city conducted
searches beyond the two provided for in the ordinance, the fact that "there is
nothing in the Ordinance [] that forbids the City from conducting necessary
investigations to ensure compliance with the law" does not render the inspections
unreasonable. 3 F.4th at 1193.

Should the City promulgate regulations that sufficiently preclude general
searches by state officials and limit or more clearly define the Ordinance's
application to home-based solo practitioners, then the Court's concerns may very
well be cured. Until then, however, these sections of the Ordinance are facially
overbroad in violation of the Fourth Amendment. This finding pertains only to the
identified sections and does not invalidate the remainder of the Ordinance. *See*
Ordinance Sec. 7-1921(2) (Severability Clause).

### C. The Unconstitutional Conditions Doctrine

Plaintiffs allege that the Ordinance places an unconstitutional condition on
the exercise of their Fourth Amendment Rights, as set forth in Count III of the
Complaint. (Doc. 1, ¶¶ 138–149). The unconstitutional conditions doctrine reflects
the Supreme Court's repeated pronouncement that the government "may not deny

a benefit to a person on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). How this principle applies depends in part on the "benefit" being conferred by the government, such as public employment, healthcare, or licenses and permits. *See Perry*, 408 U.S. 593; *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013).

 Plaintiffs cite *Chandler v. Miller* for the proposition that the doctrine applies to the Fourth Amendment. 520 U.S. 305, 317 (1997). *Chandler*, however, involved conditions placed upon qualifications for state government; the court did not discuss nor find anything related to the unconstitutional conditions doctrine. *See Chandler*, 520 U.S. at 318 (rejecting defendants' invitation to apply a deferential framework to state measures setting conditions of candidacy). However, the doctrine is "not anchored to any single clause of the Constitution," and the Court finds its application appropriate in this context. *See* Richard A. Epstein, *Unconstitutional Conditions, State Power, and the Limits of Consent*, 102 Harv. L. Rev. 5 (1998).

Plaintiffs contend that the "operative question" is "whether the warrantless search condition imposed […] can be justified by the closely regulated industry exception[]". (Doc. 90 at 20–21); *see United States v. Scott*, 450 F.3d 863, 868–72 (9th Cir. 2006) (considering whether any warrant exceptions were satisfied by

warrantless searches imposed as a condition of defendant's pretrial release from jail, finding none). The City devotes little space to this issue, arguing only that the doctrine is inapplicable because massage therapy is "closely regulated." (Doc. 88 at 31).

Although massage therapy is indeed "closely regulated", the searches imposed are unreasonable with respect to the private areas of solo practitioners' homes. Accordingly, the City places an unconstitutional condition on the exercise of Plaintiff Podolak's, and other similarly situated individuals', Fourth Amendment rights. However, because the Ordinance is not overbroad with respect to commercial premises, the Court finds that the conditions placed upon Plaintiffs Vondra, Larvie, and Poulos, and other similarly situated individuals, are not unconstitutional.

### D. Precompliance Review

Plaintiffs aver that the Ordinance violates their right to precompliance review. (Doc. 1, ¶¶ 114, 129). Although pled in their Complaint, Plaintiffs do not brief this argument in their motion for summary judgment and it appears they have largely abandoned the issue. In any event, this argument fails under *Killgore*. There, the court found that because massage establishments were "closely regulated", they fell under the *Burger* factors, which do not require precompliance review. *Killgore*, 3 F.4th at 1191, FN 7.

## IV.    Conclusion

For the reasons discussed above,

      IT IS ORDERED that the parties cross-motions for summary judgment

(Docs. 78 and 81) are GRANTED in part and DENIED in part, as set forth below:

1.  Plaintiffs are entitled to summary judgment on Count I insofar as the Ordinance permits general searches by state officials and warrantless searches of the private areas of solo practitioners' homes;

2.  Plaintiffs are entitled to summary judgment on Count II insofar as the Ordinance permits general searches by state officials and warrantless searches of the private areas of solo practitioners' homes;

3.  Plaintiffs are entitled to summary judgment on Count III insofar as the Ordinance places an unconstitutional condition on Plaintiff Podolak and similarly situated individuals;

4.  The City is enjoined from enforcing the general search provision of Section 7-1912(c) against any Plaintiff or any similarly situated individual;

5.  The City is enjoined from enforcing Sections 7-1910(k), 7-1911(c) and (f), and 7-1912 (d) and (f) against Plaintiff Podolak or other similarly situated solo practitioners operating massage therapy from their homes;

6.  Plaintiffs are entitled to nominal damages in the amount of $1.00. *See Schneider v. County of San Diego*, 285 F.3d 784, 795 (9th Cir. 2022) ("Nominal damages are a purely symbolic vindication of a constitutional right, and are awarded regardless of whether the constitutional violation causes any actual damage.").

//

//

//

7. Defendant's motion is granted in all other respects, and the City is not enjoined from enforcing the Ordinance other than those limited Subsections listed above.

DATED this 7th day of June, 2024.

Kathleen L. DeSoto
United States Magistrate Judge