IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| THERESA VONDRA, DONNA PODOLAK, LYNDA LARVIE, and ADAM POULOS<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY OF BILLINGS,<br><br>    Defendant. | CV 22-30-BLG-KLD<br><br><br>ORDER |

This matter comes before the Court on Plaintiffs' motion for attorney fees (Doc. 106) and cross-applications for taxation of costs (Docs. 105 and 107). The issues are fully briefed and ripe for ruling.

I.   Background

This case arises from Billings City Ordinance 21-5757 ("the Ordinance"), entitled "An Ordinance of the City of Billings, Montana, Regulating Massage and Spa Facilities Through Business Licensing Criteria, Providing Exemptions, Authorizing the City Administrator or Designee to Administratively Deny, Suspend or Revoke Business Licenses and Allowing an Appeal From Such Action and Providing for Criminal and Civil Penalties Upon Conviction of a Violation in Order to Combat Human Trafficking and to Promote the Health and Welfare of the

Billings Community."[1] The Ordinance requires licensure to operate a massage or spa facility in Billings and requires an exemption under the Ordinance for solo practitioners to operate a massage therapy business. The definition of massage or spa facility excludes solo practitioners.

The Ordinance has many provisions, but notably has several provisions authorizing inspections of massage therapists' property. It also allows code enforcement and law enforcement officials to enter a massage therapy business at any time during business hours to determine "compliance with any law" and allows the inspection of rooms, cabinets and storage areas. The Ordinance requires every licensee to keep a complete set of records and logs for all massage therapies administered, and states that the records are subject to inspection upon request.

Plaintiffs Vondra, Podolak and Larvie are licensed massage therapists in Billings, and Plaintiff Poulos is a client of Plaintiff Vondra. Plaintiff Vondra operates a massage company employing six massage therapists, Plaintiff Larvie operates as a solo practitioner in a commercial space, and Plaintiff Podolak operates as a solo practitioner in her home.

Plaintiffs sued the City of Billings ("the City"), alleging the Ordinance violates their Fourth Amendment rights and asserting three claims under 42 U.S.C.

---

[1] For the purposes of deciding the instant issues, the Court relies on and incorporates the factual findings in Doc. 102.

§ 1983. Count I for "physical invasion of property" alleges the Ordinance violates the Fourth Amendment on its face because it subjects "private areas of businesses" and "private business records" to "unreasonable warrantless searches in the form of physical trespasses" by City code enforcement officials and law enforcement officers. (Doc. 1, ¶¶ 107–122). Count II for "invasion of privacy" alleges the Ordinance violates the Fourth Amendment on its face because it "confers warrantless search powers" to City code enforcement officials and law enforcement officers. (Doc. 1, ¶¶ 123–137). Count III alleges the Ordinance is unconstitutional on its face and as applied because it violates the "unconstitutional conditions doctrine" by conditioning licensure on the surrender of the applicant's Fourth Amendment rights. (Doc. 1, ¶¶ 138–149).

For their remedy, Plaintiffs sought a declaratory judgment that the Ordinance violates the Fourth Amendment, and injunctive relief permanently enjoining the City from enforcing the Ordinance in its entirety, or in the alternative, enjoining it from enforcing the Ordinance by conducting future warrantless searches of Plaintiffs' businesses, homes, and papers, or of any similarly situated massage therapy businesses or practitioners. (Doc. 1, ¶¶ 150-157). Plaintiffs also sought an award of nominal damages, attorneys' fees, and "all other legal and equitable relief to which [they] may be entitled." (Doc. 1, ¶¶ 159–116).

The parties cross-moved for summary judgment, and the Court heard argument on the motions on May 7, 2024. On June 7, 2024, the Court issued its order granting and denying the cross-motions. (Doc. 102). The Court found that Montana's massage therapy industry is subject to the warrant exception for administrative searches of "closely regulated" industries, and that, with limited exception, the Ordinance as written is reasonable under the criteria set out in *New York v. Burger*, 382 U.S. 692, 702-703 (1987). Specifically, the Court found that Sections 7-1910(k), 7-1911(c), 7-1911(f), and 7-1912(d) and (f) were overbroad as to solo practitioners operating in their homes because those sections impliedly subject them to searches in private areas of their homes and require persons in the private areas of the home to present identification. (Doc. 102 at 26-27).

The Court additionally found that Section 7-1912(c), which allows inspections to "determine compliance with any law," was overbroad because it failed to preclude general searches by state officials, thereby potentially allowing searches beyond those authorized under *Burger*. (Doc. 102 at 28). Finally, the Court found that because the search conditions with respect to private areas of solo practitioners' homes were unreasonable, they placed an unconstitutional condition on the exercise of Plaintiff Podolak's, and other similarly situated individuals', Fourth Amendment rights.  However, the Ordinance search conditions did not

4

place an unconstitutional condition on the Fourth Amendment rights of the other Plaintiffs.

In sum, Plaintiff Podolak prevailed on invalidating the inspection provision as it applies to solo practitioners operating out of their homes, and all Plaintiffs prevailed to the extent Section 7-1912(c) allows inspections to determine compliance with any law. In all other respects, the Ordinance was found constitutional and Plaintiffs were denied their declaratory and injunctive relief.

## II.  Discussion

### A. Attorney Fees

Plaintiffs seek $135,544 in attorney fees for the work done through summary judgment, and an additional $1,963 for the time spent preparing their motion for attorney fees, for a total of $137,511. (Doc. 106 at 3). The City argues Plaintiffs are not entitled to any fees as they are not the prevailing party or, alternatively, if they are considered the prevailing party, the fees awarded should be significantly reduced in light of the limited success of their claims.

#### 1.  Prevailing Party Status

In a case brought pursuant to 42 U.S.C. § 1983, the Court has discretion to award a reasonable attorney fee to the prevailing party. *See* 42 U.S.C. § 1988(b). "[A] plaintiff who wins nominal damages is a prevailing party under § 1988." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992). However, that does not end the

analysis of entitlement to attorney fees. In *Farrar*, the Supreme Court held that while "the 'technical nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Farrar*, 506 U.S. at 114. When a plaintiff receives a nominal damage award because he or she failed to prove an element of a claim for compensatory damages, "the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115. That is a reasonable conclusion because an award of nominal damages, when the primary purpose of the claim was to receive money damages, evidences a low degree of success and a failure to prove compensable injury. *Wilcox v. City of Reno*, 42 F.3d 550, 554-555 (9th Cir. 1994).

    However, when the litigation achieves a tangible result that changes policy, or modifies the defendant's behavior in a way that benefits the plaintiff, fees are appropriate. *Benton v. Oregon Student Assistance Com'n.*, 421 F.3d 901, 905 (9th Cir. 2005)(citations omitted). Accordingly, to determine if fees should be awarded, the Court must look to the difference between the relief sought and received, the significance of the issue on which the plaintiff claims to have prevailed, and any public benefit that might occur as a result of the court ruling in plaintiff's favor. *Farrar*, 506 U.S. at 509-510 (O'Connor, J., concurring); *Morales v. City of San*

6

*Rafael*, 96 F.3d 359, 363 (9th Cir. 1996); *Mahach-Watkins v. Depee*, 593 F.3d 1054, 1059 (9th Cir. 2010)(citation omitted).[2]

    Here, there is no difference between the monetary relief sought and received: Plaintiffs only asked for nominal damages in their complaint. (Doc. 1 at 39). Arguably, the fact that only nominal damages were sought disfavors an award of attorney fees. However, the determinative factors in this case are the significance of the issues on which the Plaintiffs claim to have prevailed, and whether there is a public benefit resulting. The Court agrees with the Plaintiffs that the significance of the issues and public benefit justify an award of fees. First, the main issue raised by this litigation was the constitutionality of premising business licensing on agreeing to warrantless inspections of massage businesses. In other words, this case was brought to vindicate the Fourth Amendment right to be free from unreasonable search and seizure. The City correctly notes that Plaintiffs had limited success in this endeavor, but that does not change the fact that the Plaintiffs successfully challenged search conditions as applied to solo practitioners and all searches to the extent they were to "determine compliance with any law." Plaintiffs successfully

---

[2] The City argues Plaintiffs should not have been awarded nominal damages because their claims were facial challenges but this misses the point: the three massage business owners were required to go through the licensing process which required them to agree to the terms of the Ordinance, including warrantless searches for general law violations. This is the "completed violation of a legal right" justifying nominal damages per *Uzuegbunam v. Preczewski*, 592 U.S. 279, 294 (2021).

asserted these searches violated the Fourth Amendment, and thus vindicated a significant right, favoring a fee award.

The Court also finds a public benefit was achieved by Plaintiffs' success, limited as it was. The conclusion that some portions of the Ordinance are unconstitutional as written will either require the City to rewrite or abandon those portions, resulting in greater protection to Plaintiffs and the public who frequent their businesses. This satisfies the third *Farrar* factor, and supports an award of fees to the Plaintiffs.

For these reasons, the Court holds Plaintiffs are a prevailing party, and the *Farrar* analysis does not foreclose fees because although they only received nominal damages, Plaintiffs have adequately established that they prevailed on a significant issue that provides a public benefit.

## 2. Reasonableness of Fees Sought

Plaintiffs seek a total of $137,510 in fees, which represents $135,547 spent in litigating the case and an additional $1,963 for bringing the motion for fees.[3]

---

[3] To the extent there is a discrepancy in the calculations referenced on page 3 of Plaintiffs' brief and the hours X rate calculation from their spreadsheet and page 17 of their brief, the Court has used the spreadsheet numbers.

District courts in the Ninth Circuit "must calculate awards for attorneys' fees using the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Financial, Inc*. 523 F.3d 973, 978 (9th Cir. 2008) (citations omitted). "The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho*, 523 F.3d at 978 (internal quotation marks and citation omitted). The party requesting fees "must submit evidence supporting the hours works and the rates claimed," and courts should exclude from the lodestar calculation any "hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guarantee Mut. Life. Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). *See also*, *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

After the lodestar amount has been determined, the Court may consider any of the relevant so-called *Kerr* factors.[4] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d

---

[4] The *Kerr* factors include the following: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitation imposed by the client or the circumstances; (7) the amount involved and results obtained; (8) the experience, reputation and ability of the attorneys; (9) the 'undesirability' of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *Van Gerwen*, 214 F.3d at 1045 n. 2.

67, 70 (9th Cir. 1976), *abrogated on other grounds as recognized by Stetson v. Grissom*, 821 F.3d 115, 1167 (9th Cir. 2016). The extent of success on the claims brought "is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley v. Eckerhart*, 461 U.S. 424, (1983). It is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434. The court must first determine if the claims which were not successful were related to the successful claims and whether the level of overall success was sufficient to make the hours expended reasonable. *Hensley*, 461 U.S. at 434.

Although some cases involve discrete, easily parsed claims, many others "involve a common core of facts or will be based on related legal theories." *Hensley*, 461 U.S. at 435. When this is the case, it is difficult to divide time spent on a claim-by-claim basis, especially when the timekeeper has not organized it as such. Accordingly, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. While it is not necessarily appropriate to reduce a fee simply because the plaintiff did not prevail on every contention, it may be excessive to award all lodestar fees when the plaintiff "achieved only partial or limited success . . .." *Hensley*, 461 U.S. at 436. The district court must "provide a concise but clear explanation of its reasons for the fee award" and

"should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained. *Hensley*, 461 U.S. at 437.

With these principles in mind, the Court will start by calculating the lodestar using the hourly rates and hours expended.

    a.    *Hourly Rates*

To determine a reasonable hourly rate, the district court looks to the prevailing market rates in the relevant community "for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979. Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979. However, rates outside the forum district may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Camacho*, 523 F.3d at 979; *Wooten v. BNSF Railway Co.*, 387 F.Supp.3d at 1108 (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

The party seeking fees has the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 980. Satisfactory evidence may include "affidavits of the plaintiffs' attorney and

other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney[.]" *United Steelworkers of Am. v. Phelps v. Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990); *see also Camacho*, 523 F.3d at 980. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the … facts asserted by the prevailing party in its submitted affidavits." *Camacho*, 523 F.3d at 980. The district court may also rely, in part, on its own knowledge and experience in determining a reasonable hourly rate. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (holding district court did not abuse its discretion by relying, in part, on its own knowledge and experience to determine the reasonable hourly rate for attorney fees).

Plaintiffs seek attorney fees for three timekeepers: Ethan Blevins, Brian Hodges, and Daniel Woislaw. Mr. Blevins filed a declaration stating he has been a licensed attorney since 2014, and has practiced at Pacific Legal Foundation since that time. (Doc. 106-2 at ¶¶ 2-3). He has a nationwide practice devoted to the defense of individual liberty and constitutional law, and has published articles on these legal issues. (Doc. 106-2 at ¶¶ 3-4). Mr. Blevins avers that a contemporaneously filed spreadsheet attached to his declaration represents the hours he spent on this litigation, including drafting legal documents and reviewing

and revising work performed by other attorneys working on the case. (Doc. 106-2 at ¶ 5). Mr. Blevins seeks compensation for 28.93 hours at the rate of $350/hr, for a total of $10,125. (Docs. 106 at 17; 106-4 at 2).

Mr. Hodges filed a declaration stating he graduated from law school in 2001, with a variety of legal work in his background, including judicial clerkships, government work and private practice, in addition to his tenure at Pacific Legal Foundation since 2006. (Doc. 106-3 at ¶¶ 2, 3, and 5). Mr. Hodges has worked in the area of constitutional protection for civil rights, including litigation teams for several United States Supreme Court cases. (Doc. 106-3 at ¶ 4). Mr. Hodges states that he took a primary role in drafting the complaint in this case, and thereafter worked on discovery as well as motion practice. (Doc. 106-3 at ¶ 7). He seeks compensation for 38.10 hours at the rate of $500/hr, for a total of $19,050. (Docs. 106 at 17; 106-4 at 3).

Mr. Woislaw filed a declaration stating he graduated from law school in May of 2016, and is licensed to practice law in Virginia and Texas. (Doc. 106-1 at ¶¶ 1-2). He also works primarily in the area of constitutional protection for civil rights, and has litigated those types of cases in multiple federal and state jurisdictions. (Doc. 106-1 at ¶ 3). Although the most junior member of the litigation team in this case, Mr. Woislaw took a lead role in drafting pleadings, conducting discovery and arguing

motions. (Doc. 106-1 at ¶ 7). He seeks compensation for 303.92 hours at the rate of $350/hr, for a total of $106,372.

The City points out that Plaintiffs did not submit affidavit evidence, in addition to their own affidavits, establishing that the rates they charge per hour are consistent with the prevailing rates in the community for similar services performed by attorneys of comparable experience.[5] Instead, Plaintiffs rely on a compilation of rates set out in *Staton v. City & County of Butte-Silver Bow*, 2024 WL 2819335, * 7 (D. Mont. June 3, 2024). *Camacho* establishes that rate determinations from other cases provide "satisfactory evidence" of the prevailing market rate, and the Court finds that Plaintiffs have met their burden of providing such evidence. However, contrary to Plaintiffs' assertions, *Staton* does not provide a sufficient basis for all of the hourly rates sought in this case.

In *Staton*, the Court noted that the range of hourly rates for senior attorneys ran from $350-$425/ hour, with the high end awarded based on rates outside of Montana based on the particular type of litigation and the lack of Montana litigators in that field. *Staton*, * 7 (reviewing fees in *Rhoten v. Rocking J Ranch, LLC,*, CV 21-46-M-DLC, *Runs Through v. Dschaak*, CV 20-93-GF-BMM-JTJ,

---

[5] The City did not provide any contrary evidence, in the form of affidavits or declarations, to challenge the rates requested by Plaintiffs. Nevertheless, the Court must analyze the rates sought to determine if Plaintiffs have met their burden of establishing the prevailing market rates.

*Wooten v. BNSF Ry. Co.*, 287 F.Supp. 3d 1078, 1109 (D. Mont. 2019), et al.). The out of state attorney who was awarded $425/hour was a named partner with over 35 years of experience. *Staton*, * 7. Based on its review of other fee application cases, the Court reduced the hourly rates of the attorneys to $375 per hour for attorneys with 14-16 years of experience, calculated an average hourly rate for all attorneys of $300 per hour, and used that figure for the lodestar calculation. *Staton*, ** 7-8.

Here, the experience of the attorneys ranges from approximately 23 years to 8 years. The areas of law in which they all primarily practice, and which were at issue in this case, touch upon significant issues of constitutional law and personal liberties. While there are certainly attorneys in Montana who routinely file complex constitutional challenges, *see e.g. Brown v. Jacobsen*, 2022 WL 2452230 (D. Mont. July 6, 2022), the Court cannot say it was unreasonable for Plaintiffs to retain their attorneys based on the types of constitutional challenges posed in this case. The Court finds that the rates for Mr. Woislaw and Mr. Blevin are reasonable, but reduces Mr. Hodges' hourly rate from $500/hour to $400/hour to reflect the prevailing market rate for similarly experienced attorneys.

b.   *Hours Reasonably Expended*

"When determining the number of hours to be used to calculate the lodestar, the Court should exclude those 'hours that were not reasonably expended.'"

*Wooten,* 387 F.Supp.3d at 1109 (quoting *Hensley*, 461 U.S. at 434). The moving party "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The fee computation should not include hours devoted to clerical tasks, which include but are not limited to "filing motions with the court, filling out and printing documents, preparing affidavits and drafting certifications of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Alliance for the Wild Rockies. Inc. v. U.S. Army Corps of Engineers*, 2019 WL 1749518, at *6 (D. Or. Apr. 18, 2019) (citation omitted).

    The City does not challenge any specific billing entry, but does argue that the fees sought should be reduced in light of the limited success Plaintiffs achieved. As noted above, this analysis is more properly made after the lodestar has been calculated. The Court has reviewed the spreadsheet submitted by Plaintiffs in support of their claim for fees, and finds that the hours billed are reasonable for the work performed. The majority of time was billed by Mr. Woislaw, who took the laboring oar on drafting court documents and discovery. While there is some limited overlap between Mr. Woislaw and Mr. Blevins, for example attending depositions of the parties, the Court cannot say such a practice is unreasonable, especially in a case with multiple plaintiffs presenting different challenges to the Ordinance. Accordingly, the Court will use the hours submitted

by plaintiff for the lodestar calculation. With the hourly rate reduction applied to Mr. Hodges' attorney fee request, the fees sought by Plaintiff for Mr. Hodges is reduced from $19,050 to $15,240. This results in a total lodestar amount of $133,700.

      c.    *Adjustment for Limited Nature of Relief*

As discussed above, the premise of Plaintiffs' case was that the Ordinance violated the Fourth Amendment, and they sought a declaration to that effect and injunctive relief prohibiting enforcement of the entire ordinance or, in the alternative, prohibiting future warrantless inspections. Plaintiffs achieved very limited success on both fronts: because the City successfully argued that massage therapy is subject to the closely regulated industry warrant exception, the overwhelming majority of the Ordinance remains valid and enforceable, allowing warrantless administrative inspections in most cases. The only issues Plaintiffs prevailed on were invalidating the inspection requirement as to solo practitioners practicing out of their home (Ms. Podolak) and invalidating the general search provision of Section 7-1912(c). The City was not enjoined from enforcing the Ordinance other than those limited provisions, which is far from the relief sought by the Plaintiffs.

Under *Hensley*, the Court must consider the extent of success in relation to the fee sought, and must explain the reasons for the fee awarded. This case

involved a common core of facts, namely the Ordinance, with an overarching legal theory (Fourth Amendment violation) that resulted in very limited success. While the Court has found that Plaintiffs are a prevailing party, and entitled to some fees, the very limited success obtained justifies a significant reduction in the fees awarded. As noted in *Hensley*, "[t]here is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436.

With all of these considerations in mind, the Court finds a reasonable fee award in this case is $33,425, which is 25% of the fee sought by Plaintiffs. This award reflects the fact that Plaintiffs prevailed on a significant issue that provides a public benefit, tempered by the very limited success they had overall in relation to challenging the constitutionality of the Ordinance. Of the four Plaintiffs, only Ms. Podolak was able to limit the Ordinance's administrative inspection provisions, other than the general law language. Each of the other Plaintiffs, including Mr. Poulos, remains subject to the administrative inspection provisions, and all of the massage therapist Plaintiffs must comply with the Ordinance's licensing and exception application requirements. The Court accounted for other factors, including the novelty and difficulty of the question presented, skill of the attorneys and awards in similar cases in its determination of the reasonableness of hours and rates. Under *Hensley*, an award of $33,425 is a reasonable fee award in relation to the success obtained.

B.  **Bill of Costs**

Both Plaintiffs and the City filed a Bill of Costs, seeking taxable costs as the prevailing party. (Docs. 105 and 107). Both Plaintiffs and the City objected to each other's requests for costs, arguing prevailing party status. (Docs. 110 and 112).

Federal Rule of Civil Procedure 54(d) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney fees—should be allowed to the prevailing party." There is thus "a presumption in favor of awarding costs to a prevailing party" but the rule "vests in the district court discretion to refuse to award costs." *Ass'n. of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000). The court must specify why it reduced or refused to award costs, and those reasons must be appropriate. *Ass'n. of Mexican-Am. Educators*, 231 F.3d at 592. Where there are mixed results, and both parties arguably prevail, the Court has discretion to require each party to bear its own costs. *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996)(citation omitted).

As noted above, for the purpose of awarding attorney fees, the Court has found Plaintiffs to be a prevailing party. That does not mean, however, that the City did not also prevail, as it successfully defended the Ordinance in large part and significantly curtailed Plaintiffs' efforts to have the Ordinance declared unconstitutional and all administrative inspections enjoined. The Court finds, under

the particular facts of this case, it is equitable for the parties to bear their own costs.

### III. Conclusion

For the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion for attorney fees (Doc. 106) is GRANTED and the Court awards Plaintiffs $33,425 in attorney fees.

IT IS FURTHER ORDERED that the parties cross-applications for taxable costs (Docs. 105 and 107) are denied.

DATED this 10th day of March, 2025.

Kathleen L. DeSoto
United States Magistrate Judge